# Wakeling *v.* Presbyterian Church of Frankford.

*Evidence—Boundaries—Burial lot.*

On a bill in equity to restrain the extension of a church building over a portion of the church's land which was alleged to have been dedicated for burial purposes, it appeared that the deeds of the plaintiff, who was a lot holder, showed that none of the land granted to her was affected by the proposed extension, and it also appeared that a plan of the church's property made in 1861, indicated that burial lots had not been laid out on the land in controversy. There was nothing in the church records to show a dedication. Plaintiff offered to show by declarations of members of the congregation who were also trustees of the church that the land in controversy was included in the burial ground, and that the church building was not to be extended over the land. All of these persons were dead at the time of the hearing before the master, and there was no evidence that they had authority to bind the corporation. Plaintiff did not purchase her lots until many years after these declarations were made. *Held*, (1) that the declarations offered in evidence were inadmissible; (2) that the plaintiff was bound by the records of the church; (3) that there was no error in dismissing plaintiff's bill.

Argued Jan. 16, 1901.   Appeal, No. 309, Jan. T., 1900, by
plaintiff, from decree of C. P. No. 2, Phila. Co., June T., 1889,
No. 404, dismissing bill in equity in case of Samuel Wakeling,
Executor of Mary A. Wakeling, Deceased, *v.* The Presbyterian
Church of Frankford.   Before McCollum, C. J., Fell,
Brown, Mestrezat and Potter, JJ.   Affirmed.

Bill in equity for an injunction, to restrain the extension of
a church building over land alleged to have been dedicated for
burial purposes.

The case was referred to Silas W. Pettit, Esq., as master.

From the master's report it appeared that the Presbyterian
Church of Frankford owned land which had been conveyed to
it for the purposes of a church and for burial purposes.   The
church was erected upon the front of the lot, and the rear por-
tion was used as a burial ground.   By the act of February 26,
1861, the church was given authority to sell burial lots.   Plain-
tiff owned two lots, one of which she bought in 1871, and the
other in 1889.   One of the avenues in the church land was
known as West avenue.   All interments were made east of
this avenue, and the space between the church wall and the
west line of West avenue was an unoccupied strip of ground
in the shape of a sodded terrace, and had never been used for
interments.   This is the land in controversy.   In 1889 the
church proposed to extend the pulpit projection so as to cover
a portion of this space.   The proposed extension did not affect
plaintiff's lots nor did it in any way encroach upon West ave-
nue.   There was offered in evidence a plan prepared by Samuel
Wakeling in 1861, which did not show any burial lots laid out
on the land in controversy.   No record of the church was pro-
duced showing any dedication of the land for burial purposes.
Samuel Wakeling testified as to declarations made by certain
trustees of the church in 1859 which tended to show that they
understood that the space in controversy was part of the burial
grounds.   The master recommended that the bill should be dis-
missed.   On exceptions to his report the master filed a supple-
mental report which was in part as follows:

Mr. Wakeling testifies that about the time that the church
was altered in 1859, as representing his family and interested
in the burial ground, he had a conversation with Mr. Thomas

Wriggins, chairman of the building committee of the board of trustees, with Mr. John Diehl, secretary of the board of trustees and secretary of the building committee, and with Mr. Peter Slaughter, "who was an old influential member of the congregation who had been sexton and pew-rent collector," and that each of them informed him, in substance, that the fence in the rear of the church as it then existed, from the west end of the wall on Church street to the end of the carriage shed, was the division fence of the church lot from the burial ground; that east of that was burial ground property, and that the proposed building was to be limited to the fence line, and that Mr. Slaughter said that the church could not be put over that line if they wanted to; and Mr. Wakeling also thinks that Colonel Solly, who was a trustee of the church, told him substantially the same thing. All these four persons were deceased at the time Mr. Wakeling was examined, and their declarations were offered in evidence as within the exception to the rule against hearsay, which allows such testimony in respect to boundaries, and in support of his position the counsel for the plaintiff cited Starkie on Evidence, 47, 51, 52, Wharton on Evidence, sec. 191, Cauffman v. Presbyterian Congregation, 6 Binney, 59–62, McCausland v. Fleming, 63 Pa. 36, 38, and Moul v. Hartman, 104 Pa. 43, 46.

But even conceding that these declarations are admissible, the difficulty remains that they relate to the action of the defendant corporation, of which records, apparently full and correct, have been kept and produced in evidence, and as these records fail to disclose any action by the corporation such as is necessarily implied from the declaration of the witnesses, they therefore negative them and must prevail.

That such declarations cannot be received where there is no ambiguity to be cleared up, and cannot control deeds or other muniments of title, is plain : Wharton on Evidence, sec. 192.

That Mr. Diehl considered there was some doubt upon the subject as to whether or not the corporation had ever made any dedication of the ground between the old fence line and the West avenue, is to be inferred from Mr. Wakeling's testimony of a conversation he had with Mr. Diehl in 1861.

Mr. Wakeling testifies that at the time he undertook (at the earnest request of the board of trustees) to prepare a plan of

the burial ground, he was referred to and met Mr. Diehl upon the ground to receive his direction and information, and that Mr. Diehl then repeated to him that the "strip of ground which extended between the west line of the West avenue and the old fence, had always been set apart as a little matter of adornment, and as an easement or passageway for the funerals of the dead that were interred there, and also for funerals coming in the double gate passing along the West avenue and down the South avenue."

Thereupon Mr. Wakeling asked how this was to be shown upon the plan, but Mr. Diehl replied by asking why it was necessary to mark it at all, and told him "to leave off all figures west of the West avenue;" stating that if they did not know the quantity of ground there no one would make an effort to buy it; and Mr. Wakeling again repeats, in another place, that Mr. Diehl told him to leave all figures off the part of the burial ground west of the West avenue, and to leave the fence lines off so there would be no excuse for people endeavoring to purchase in that place, so that it could always be used as an easement and an adornment, as it was intended.

Mr. Wakeling followed in this respect Mr. Diehl's direction, and when he exhibited the plan to Mr. Foster as he had it prepared, informed Mr. Foster of Mr. Diehl's directions in respect to leaving off the figures and fences west of the West avenue, which Mr. Foster approved.

It would seem, therefore, from this testimony, that Mr. Diehl and Mr. Foster understood that the strip between the fences and the west walk was to be considered as part of the burial ground and to be retained therein, but was not to be used for burial purposes, but at the same time did not want the church to know it; that is to say, did not want it to appear upon the plan which Mr. Wakeling had been authorized to make for the purpose of becoming the record of the church in respect to the burial ground, and which in fact was made and was adopted by and did become the corporate act of the Frankford Church.

It would seem to follow that the corporation defendant is bound by its own act and not by the understanding or the declarations of Mr. Diehl, or Mr. Foster, as to what it had done or what it should do.

Besides these declarations the plaintiff relies upon the testi-

mony of Mr. Wakeling, that in 1859 when it was discovered that the extension of the church then made would project slightly over the old fence line, it was agreed by Mr. Wriggins and Mr. Diehl:

" That the intervening spaces between the old fence line, or division line, and the main wall of the east end of the church, should be thrown into the burial ground and dedicated to the same as an auxiliary to the four feet strip for the purposes of adornment and as an easement, and that the western inclosure or boundary in addition to the east end of the building should be established by a fence to run from the west end of the church street wall to the southeast end of the main building of the church and by another fence to run from the northeast corner of the main building of the church to the carriage shed."

From this testimony it is to be inferred that the space west of the west walk had not up to 1859 been dedicated; otherwise of course no agreement in respect thereto would be necessary; and in the absence of any evidence of authority on the part of Mr. Wriggins and Mr. Diehl to make any such agreement on behalf of the church, it would seem to be clear that the corporation defendant was not in any way bound thereby.

The plan marks the burying ground as bounded on the west by the West avenue, and there is nothing shown upon it in any degree to support the contention that the agreement alleged to have been made by Messrs. Wriggins and Diehl was known to, authorized or ratified by the board of trustees, or the congregation of the corporation defendant, or by which the fences, which at that time extended across the property north and south from the church building were substituted for the West avenue as the western boundary of the burying ground.

The deed to the plaintiff, made on December 27, 1871, described the lot conveyed as " marked No.    , in range 1, section 1, in the center block in the plan of the said burial ground drawn by Samuel Wakeling, surveyor, in 1861, and approved and adopted by resolution of the said board of trustees May 13, 1861, as part of the records of said church, described as follows, to wit: Situate on the easterly side of the West avenue laid out four feet and six tenths of a foot wide on said plan." The deed made on May 9, 1889, also refers in similar words to the plan of May 1, 1861, as part of the records of the church.

So far, therefore, as the plaintiff's case is concerned, it seems quite evident that the plan of 1861 governs, and inasmuch as that plan shows the west line of the west walk as the western boundary of the burial ground, and it is not shown that the church edifice or the fences connected therewith have been extended over that line, the master is unable to see that he has erred in the conclusions stated in his original report.

For these reasons and those stated in his original report, the master is of opinion, and so reports, that the bill should be dismissed, and attaches hereto a form of decree to that effect.

Exceptions to the master's supplemental report were overruled and a decree entered dismissing the bill.

*Error assigned* was the decree of the court.·

*Samuel Wakeling*, for appellant.

*Henry K. Fries*, with him *John G. Johnson*, for appellee.

PER CURIAM, February 18, 1901:

An examination of the master's comprehensive and able report has convinced us that the conclusions and recommendation arrived at therein ought to be sustained. The court in banc approved the conclusions and recommendation, and entered a decree dismissing the plaintiff's bill with costs. We affirm the decree so entered.

Decree affirmed and appeal dismissed at the cost of the appellant.